IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LISA YVETTE ROBINSON,                    :
          Plaintiff,                :          CIVIL ACTION
                           :
                           :          NO. 20-5836
          v.                         :
                           :
KILOLO KIJAKAZI,[1]                       :
Acting Commissioner of Social Security    :
          Defendant.                 :

**<u>MEMORANDUM OPINION</u>**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                        June 17, 2022

       This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final

decision of the Commissioner of the Social Security Administration ("Commissioner"), which

denied the application of Lisa Yvette Robinson ("Robinson") for Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security

Act, 42 U.S.C. §§ 301, *et seq.* (the "Act").  Presently before the Court is Plaintiff's Brief and

Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 13); Defendant's Response

to Plaintiff's Request for Review ("Def. Br.") (Doc. 14); and the record of the proceedings before

the Administrative Law Judge ("ALJ") (Docs. 12) (hereinafter "R."). Plaintiff asks the Court to

reverse the decision of the ALJ and to remand the matter to the Commissioner for further

administrative proceedings.  The Commissioner seeks the entry of an order affirming the decision

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant
to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for
Andrew Saul as Defendant. No further action need be taken to continue this suit by reason of the
last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the ALJ.  For the reasons set forth below, we grant the request for review and remand for further proceedings.

## I.      FACTUAL AND PROCEDURAL HISTORY

Robinson filed a claim for DIB on August 9, 2018, and subsequently filed an application for SSI as well, alleging disability beginning on November 1, 2017.  She had a limited education and prior work history as an aide at a residential shelter.  She was 49 years old as of her alleged disability onset date.  In her application materials, she identified a number of conditions that she believed prevented her from working, including arthritis in her knees, depression, and PTSD. (R. 183-92.)  She treated for her knee problem in July 2018 at a Penn orthopedic clinic.  At all relevant times, however, she received both primary care and specialized mental health care at the Abbotts Falls location of the Family Practice & Counseling Network (the "Abbotts Falls clinic").[2]

The state agency denied her claim on December 28, 2018, and Robinson requested a hearing with an ALJ.  Robinson's counsel obtained and submitted to the ALJ updated records of her medical and mental health treatments since the state agency review.  Counsel also obtained questionnaire responses in May 2019 from her psychiatrist at the Abbotts Falls clinic, Gail Greenspan, M.D., and her primary care provider there, nurse practitioner Sarah Rabin-Lobron, CRNP, regarding Robinson's functional capacity for work in light of her impairments.  (R. 351-56.)

The ALJ convened a hearing on October 24, 2019, at which Robinson appeared with counsel.  She testified that she lived with a daughter and three year-old granddaughter and spent

---

[2]  While her mental health medications were initially managed in the Primary Care clinic, by later 2018 she came under the care of providers in the Behavioral Health Clinic, including Delmina Henry, Ph.D. and Gail Greenspan, M.D.  She participated in weekly therapy sessions that are referred to but not documented in the record.  She also received monthly medication checks from either psychiatric nurse practitioners or Dr. Greenspan.

most of the day in her room, even when her daughter left the granddaughter in her care.  She testified that her other grown children had brought other grandchildren to her home previously for childcare but that they had switched to a daycare arrangement because Robinson did not "have the patience" for childcare anymore.  (R. 37-42.)  Robinson testified that she could not work because of her knees and because she is "stressed" and does not like to be around other people.  (R. 40-48.)  An impartial vocational expert ("VE") testified regarding the vocational implications of various functional capacity formulations propounded by the ALJ in hypothetical questions.  The VE also testified that if either of the opinions offered by the treating psychiatrist or nurse practitioner were fully credited, there would be no jobs that Robinson could perform.

On November 29, 2019, the ALJ issued her written decision.  She found that Robinson had not been disabled at any time since the date of her alleged disability onset date of November 1, 2017 based on her finding that Robinson could perform unskilled work at the light exertional level subject to postural restrictions and particular non-exertional limitations.  Robinson requested review by the Appeals Council, but on September 30, 2020, that body determined that there was no reason to set aside the ALJ's decision, rendering it the final decision of the Commissioner.  This litigation followed.

## II.   STANDARD OF REVIEW

This Court must determine whether the ALJ's conclusion that Robinson could perform jobs that exist in sufficient numbers in the national economy is supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  *See also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).  Substantial evidence is "more than a mere scintilla but may be

somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.   DECISION UNDER REVIEW

The issue before the ALJ at the time of the November 29, 2019 decision under review was whether Robinson had been disabled within the meaning of the Act at any time since November 1, 2017. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a) to reach her conclusion. At Step One, she found that Robinson had not engaged in substantial gainful activity since the alleged onset date. (R. 15, Finding No. 2.) At Step Two, she found that Robinson suffered from severe, medically-determinable impairments, specifically osteoarthritis, obesity, affective disorders, and post-traumatic stress disorder. (R. 15, Finding No. 3.) At Step Three, she concluded that Robinson did not have an impairment or combination of impairments that satisfied the criteria of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (R. 16, Finding No. 4.) These findings are not in dispute.

The ALJ then considered Robinson's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ determined:

> **5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She must avoid frequent exposure**

> **to hazards, including moving machinery and unprotected heights. The claimant is limited to unskilled work with routine, repetitive tasks, with no frequent changes in the work setting, no public interaction and no more than occasional interaction with co-workers or supervisors.**

(R. 18.)

At Step Four, the ALJ agreed that Robinson was unable to perform her past relevant work as a "children's institution attendant," as this was a semi-skilled job that Robinson generally performed at the heavy exertional level at the shelter at which she worked. (R. 21, Finding No. 6.) The ALJ then proceeded to Step Five, at which she was to assess whether Robinson was capable of performing any other jobs that exist in significant numbers in the national economy considering her age (as a "younger individual" as of her alleged disability onset date), her limited education, her English language skills, and her RFC. At the hearing, the VE agreed that there were light, unskilled jobs – such as Routing clerk, Marker, and Checker – that did not require someone to engage in any of the prohibited postural activities and in conformity with the restrictions that the ALJ found Robinson's mental health conditions imposed. (R. 49-50.) Citing to this testimony, the ALJ concluded that Robinson was capable of performing jobs that existed in significant numbers in the national economy and thus was not disabled. (R. 22-23 & Finding No. 10.)

## IV.    DISCUSSION

Robinson asserts that the ALJ reached an RFC finding that is contradicted by all medical opinions in the record and is the product of legal error in that she did not properly evaluate the medical opinions in accordance with the Commissioner's rules and Third Circuit precedent. (Pl. Br. at 3, 14.) She makes three arguments in this regard. The first concerns the ALJ's rejection of all medical opinions of record, which Plaintiff contends left the ALJ to make an impermissible RFC finding based only upon her lay opinion. Her second contention is that the ALJ's allegedly selective reading of the record rendered her RFC finding unsupported by substantial evidence. The

third and final alleged legal error is that the ALJ's finding regarding the persuasiveness of the treating providers' opinions was not reasonable.  (Pl. Br. at 14-18.)

We note here that the consideration due to the medical opinions in Robinson's record is described in revised regulations that went into effect in 2017.  Pursuant to the new regulations, at 20 C.F.R. § 404.1520c(a), and in contrast to the prior construction of 20 C.F.R. § 404.1527 that it replaced, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight," to any particular medical opinion, including from a treating source.  Rather, the new regulations specify how adjudicators must articulate their consideration of medical opinions, *see* 20 C.F.R. § 404.1520c(b), and set out several factors that adjudicators should consider "as appropriate" – "the most important" of which relate to the supportability of the opinion and its consistency.  20 C.F.R. § 404.1520c(a).[3]

We will begin with Plaintiff's contentions about the ALJ's skewed reading of the record, particularly as it relates to the opinion of the treating psychiatrist.  As we set forth below, that analysis provides a sufficient basis for us to conclude that remand is appropriate.

**A.     Whether the ALJ properly evaluated the medical opinions and whether her RFC finding is supported by substantial evidence**

**1.     Dr. Greenspan's opinion**

The record contained two opinions of treating providers, both of which Plaintiff believes "are consistent with and supported by the record," (Pl. Br. at 9), but which were not accepted in their entirety by the ALJ.   One opinion was rendered by her primary care provider at the Abbotts

---

[3]   The Regulations identify the following list of factors the adjudicator will consider when evaluating medical opinions in a given case: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the source has personally examined the patient; (4) specialization; and (5) other factors, including familiarity with other evidence in the claim or an understanding of disability program requirements.  20 C.F.R. § 404.1520c(c).

Falls clinic, nurse practitioner Sara Rabin-Lobron.[4]  The second opinion was from her treating psychiatrist at the same clinic, Dr. Greenspan, on an RFC questionnaire form that had been supplied by her counsel.  As Dr. Greenspan indicated on the form, Robinson had begun treatment in the Behavioral Health clinic in August 2018, where she received weekly therapy and monthly medication checks.  Dr. Greenspan identified Robinson's current diagnoses and medications, characterized her prognosis as "poor," and identified the following clinical findings as demonstrating the severity of Robinson's symptoms: "depressed mood; anxiety – social isolation[;] psychomotor retardation; [and] frequent crying spells."  (R. 351.)

The ALJ's decision correctly recounted several key points of Dr. Greenspan's responses as to her capabilities, including "that the claimant had limited but satisfactory ability to adhere to basic standards of neatness and cleanliness; and was seriously limited but not precluded in her ability to understand and remember detailed instructions, travel in an unfamiliar place, and use public transportation."  (R. 21, citing Exhibit 5F at p. 3.)  The ALJ recounted that Dr. Greenspan opined that Robinson "was unable to meet competitive standards" with respect to carrying out detailed instructions, setting realistic goals or making plans independently of others, dealing with stress of even semiskilled work, interacting appropriately with the general public, and maintaining socially appropriate behavior.  (*Id.*, citing same.)  The ALJ also recounted Dr. Greenspan's conclusion that Robinson would be absent more than four days per month.  (*Id.*, citing Exhibit 5F at p. 4.)

----

[4]  Nurse Practitioner Rabin-Lobron opined that Robinson was quite limited as to the amount of standing or walking she should perform or the extent to which she could meet other exertional or postural demands.  She also identified Robinson's diagnoses as including Major Depression and PTSD opined that Robinson's symptoms would be severe enough to "constantly" "interfere with attention and concentration needed to perform even simple work tasks."  (R. 355-56.)

Inasmuch as the ALJ limited Robinson to unskilled work with routine, repetitive tasks, and to work that did not involve frequent changes in the work setting or any public interaction, and which involved only occasional interaction with co-workers or supervisors, the ALJ obviously accepted many aspects of Dr. Greenspan's opinion.  What the ALJ evidently did *not* accept was that Robinson would be absent more than four days per month due to her the symptoms of condition or her treatment needs and that she could not maintain socially appropriate behavior even in merely occasional interaction with co-workers and supervisors.  The ALJ offered this explanation for why she found the opinion of Dr. Greenspan "unpersuasive" (R. 21):

> Though Dr. Greenspan has a treating relationship with the claimant, *her opinion is not consistent with either her own treatment notes or the record as a whole*.  While some mental status exams showed the claimant had a depressed, irritable, and angry mood with constricted affect, others showed her to have a normal mood and affect. (Exhibits 2F, 3F, and 8F).  Further, she consistently had normal thought process, attention, and memory and was reported to be cooperative.  (Exhibits 2F, 3F, and 8F).  Finally, her symptoms were described as moderate and she was diagnosed with moderate depression and PTSD.  (Exhibits 2F and 3F).

(R. 21 (emphasis added).)  The ALJ believed that her RFC finding was "supported by the medical evidence, including grossly normal exam findings, conservative treatment, *and [Robinson's] ability to care for her grandchildren*."  (R. 21 (emphasis added).)

We cannot agree, however, that these criteria support the ALJ's finding that Robinson remains capable of work.  Dr. Greenspan's questionnaire response cites to Robinson's "psychomotor retardation" and "social isolation," and the fact that she "can no longer function in social situations."  (R. 351-53.)  Dr. Greenspan's treatment records, and those of her colleagues at the Abbotts Falls clinic who provided psychiatric referrals and medication management, consistently noted Robinson's "depressed, irritable, and angry mood with constricted affect," as the ALJ conceded.  *See, e.g.,* R. 323 (6/19/17), R. 311 (7/3/17), R. 262 (8/9/18) (notes of social

worker in behavioral health consultation); R. 283 (7/27/17), R. 274 (8/24/17), R. 273 (9/21/17) (notes of psychiatric nurse practitioner); R. 337-39 (10/17/18), R. 342 (11/14/18), R. 343 (12/5/18) (notes of Dr. Greenspan).  The ALJ cast doubt on the consistency of these records with "the record as a whole" with reference to other notes that "showed [Robinson] to have a normal mood and affect."  (R. 21.)  The *only* records documenting "normal mood and affect," however, were notes of Nurse Practitioner Rabin-Lobron from Robinson's appointments for annual physical exams, routine gynecological care, or other maladies.  The descriptor for "Psych" as part of the "Physical Exam" portion of the treatment note consistently read "alert and cooperative; normal mood and affect; normal attention span and concentration" – even though the narrative portion of the note may have described complaints of anxiety and depression or the problem list included diagnoses such as "Depressive D/O, Major, recurrent episode, severe." *See, e.g.,* R. 278-81.  The ALJ singled out these Physical Exam "psych" observations of the generalist primary care provider as reliable evidence of mood and affect when *all* indicators are that they were boilerplate notations, as they *never* changed from one appointment to the next.  The ALJ provided no explanation for this elevation of the value of Nurse Rabin-Lobron's "psych" observations above those of the practicing psychiatrist and psychiatric nurse practitioner's records of mental status and mood at specialty psychiatric appointments.  To be sure, Dr. Greenspan's statement as to Robinson's mood and affect during the period of treatment was not inconsistent with her own treatment notes, as claimed by the ALJ.  *See* R. 21.  On the contrary, her treatment notes *uniformly* described Robinson's mood as "depressed" (and sometimes also "angry" and "irritable") and her affect as "constricted."  (R. 339, 342, 343.)

Setting aside the boilerplate "psych" observation cut and pasted into the primary care treatment notes, Dr. Greenspan's opinion that Robinson would be unable to maintain attendance

at work and engage socially is, in fact, well-supported by the record as a whole.  A social worker

at the Abbotts Falls clinic, for example, made an internal referral for outpatient Behavioral Health

treatment in August 2018, noting that Robinson was "struggling with depression and anxiety and

not caring for self."  (R. 262.)  She commented that:

> [Patient] is isolating self and not leaving house.  [S]he is crying "all
> the time" and has no energy no motivation to do "anything."  [S]he
> is overwhelmed with financial stress as well as relationship with
> family – quick to lose temper with grandchildren.

(R. 262.)   In the psychiatric evaluation that Dr. Greenspan conducted in October 2018, Dr.

Greenspan noted that Robinson reported that she had "been crying at the drop of a hat, also loses

her temper at her grandchildren."  (R. 337.)  This was despite treatment at the Primary Care clinic

with Wellbutrin and Abilify.  *Id.* When seen by Dr. Greenspan again the next month for a 30-

minute med check, she reported that she "still stays in her room most of the day and night – 'to get

away from people.'"  (R. 342.)  Although Dr. Greenspan increased one of the medications at that

time, Robinson complained to Dr. Greenspan at her appointment the following month that she felt

"the same":

> No improvement in mood or energy.  She still lacks motivation to
> leave her room and do things she needs to do.  *For example, her
> grandchildren come to her home early in the morning and after
> school, until their mom finishes work.  [Patient] does not give them
> snacks or interact with them.  She says it's all too much for her.*  I
> asked her if things were different when she was raising her children.
> Her eyes filled with tears, and she said that she used to be a
> supermom – making food, folding and ironing their clothes.  Now
> she feels paralyzed.

(R. 343 (emphasis added).)  Dr. Greenspan substituted one of the medications at that appointment

but had changed the medication once again by the time she completed the questionnaire six months

later in May 2019.   The record thus supported Dr. Greenspan's observation in the RFC

questionnaire that Robinson had had a "poor response to several trials of antidepressants despite compliance w/ meds and [treatment]." (R. 351.)

On this record, then, we cannot accept the ALJ's assessment that Dr. Greenspan's opinion is "unpersuasive." (R. 21.) Robinson's mood and affect were *not* normal, and her "care" for her grandchildren reflects inattention as opposed to socially appropriate behavior. There was much support for Dr. Greenspan's opinion that Robinson's symptoms of major depressive disorder rendered her unable to participate in the workforce even with several accommodations. The ALJ's selective reading of the record to utilize the primary care providers' boilerplate psych observations on physical exam rather than the observations of psychiatric behavioral health personnel cannot be accepted as constituting substantial evidence supporting her conclusion. Given the faulty premise that Dr. Greenspan's opinion "is not consistent with either her own treatment notes or the record as a whole" (R. 21), the ALJ's RFC finding cannot be said to be supported by substantial evidence.

## V.    CONCLUSION

The ALJ's RFC finding accounted for many of Robinson's limitations due to her psychiatric impairments. Yet the support for her decision to reject the most serious restrictions endorsed by the treating psychiatrist was not grounded in substantial evidence but rather arose from a skewed reading of the record. This approach failed to adhere to the Regulations that principally look to the supportability and consistency of the medical provider's opinion and which also consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the specialization of the provider. *See* 20 C.F.R. § 404.1520c(a). The ALJ's failure to recognize the deficiency of her analysis in these regards as to the opinion of Dr. Greenspan necessitates a remand.

An appropriate order will follow.